IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                                 Criminal No. **3:13CR163**

**LAVAR RESHAUD FORD,**

Petitioner.

## MEMORANDUM OPINION

Lavar Reshaud Ford, a federal inmate proceeding *pro se*, brings this motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 51).[1] Ford contends that, in conjunction with his trial and sentencing, his counsel was ineffective,[2] and that several other errors occurred. Specifically, Ford demands relief because:

Claim One: "[(a)] Mr. Ford did not qualify as a career offender and [(b)] sentence was in error." (*Id.* at 4.)

Claim Two: "Mr. Ford's conviction based on unreliable testimony requires remand." (*Id.* at 5.)

Claim Three: "The Government violated both the defendant's and the State's Tenth Amendment[3] rights—jurisdictional challenge." (*Id.* at 7.)

Claim Four: "Counsel rendered ineffective assistance of counsel which caused prejudice and harm[] to Mr. Ford." (*Id.* at 8.)

Claim Five: "[The residual] [c]lause [of the Armed Career Criminal Act ("ACCA")] is unconstitutionally vague requiring correction of sentence." (Br. Supp. § 2255 Mot. 20, ECF No. 52.)

---

[1] The Court employs the pagination assigned to Ford's submissions by the CM/ECF docketing system. The Court corrects the spelling, capitalization, punctuation, and spacing in quotations from Ford's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[3] "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

The Government has responded, asserting that Ford's claims lack merit. (ECF No. 57.) Ford has filed a Reply. (ECF No. 58.) For the following reasons, Ford's § 2255 Motion (ECF No. 51) will be DENIED.

## I. PROCEDURAL HISTORY

On September 18, 2013, a grand jury charged Ford, in a one-count Indictment, with possession of a firearm and ammunition by a felon. (Indictment 1, ECF No. 1.) Following a one-day jury trial, Ford was convicted of Count One. (ECF No. 30, at 1.)

Prior to sentencing, a Probation Officer determined that Ford "[did] not qualify for a sentence enhancement under the Career Offender, Criminal Livelihood, Armed Career Criminal or Repeat and Dangerous Sex Offender sections, as defined in Chapter 4, Part B, of the Sentencing Guidelines." (Pre-Sentence Investigation Report ("PSR") ¶ 35, ECF No. 34.) The Probation Officer determined that Ford's adjusted offense level was 26. (*Id.* Wksht. A, at 1.) With thirteen criminal history points, Ford was placed into Criminal History Category VI. (*Id.* Wksht. C, at 4.) Ford's Sentencing Guidelines range called for 120-150 months of incarceration; however, because of the statutory maximum of ten years, the restricted Guidelines range was 120 months. (*Id.* Wksht. D, at 1.) Counsel for Ford filed a request for a variant sentence of 60 months, "based upon the fact that the firearms guideline is flawed, [Ford's] prior convictions [were] remote, [Ford's] criminal history [was] overstated, and this [was] a non-violent status offense." (ECF No. 33, at 1.)

During the sentencing hearing, Ford's attorney reiterated her arguments for a variant sentence. (Apr. 23, 2014 Tr. 4–11, ECF No. 46.) With respect to Ford's criminal history, counsel argued that "five of the 11 points are for minor trespassing convictions, and if you back

2

out those convictions, [Ford] is in a far lower Criminal History Category." (Apr. 23, 2014 Tr. 8.) The Court agreed, stating:

> What does move me is that I think it is clear that the Criminal History Category is overstated. You know, Criminal History Category comes out to be a 6, and when you look at it, it is nowhere near what we normally would consider a Criminal History Category 6. And so looking at this criminal history and how essentially trespassing has pumped it up, the Court would agree with the argument that it is overstated, substantially overstated. I looked at the Guidelines range for Criminal History Category 4, which is 92 to 115. That would probably be a more appropriate Guidelines range.

(Apr. 23, 2014 Tr. 16–17.) However, the Court determined that a further variance from the new range was appropriate, and imposed a term of 72 months of incarceration. (Apr. 23, 2014. Tr. 18; *see also* J. 2, ECF No. 38.)

On appeal, Ford challenged this Court's denial of his motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. *United States v. Ford*, 585 F. App'x 295, 295 (4th Cir. 2014). Ford specifically argued "that the Government did not establish that he actually possessed a firearm and ammunition." *Id.* at 295–96. The United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment, concluding that "[b]ecause the Government introduced ample circumstantial evidence from which a reasonable factfinder could conclude beyond a reasonable doubt that Ford had exercised physical control over a loaded handgun, . . . there [was] sufficient evidence to support the jury's finding that Ford possessed a firearm and ammunition." *Id.* at 296.

## II. SUFFICIENCY OF THE EVIDENCE

In Claim Two, Ford alleges that his "conviction [was] based on unreliable testimony [and] requires remand." (§ 2255 Mot. 5.) Ford contends that because "Officer Langston's statement/testimony which said he 'believed' that Mr. Ford had a handgun is *opinion* . . . . Mr.

3

Ford should not have been charged at all." (Mem. Supp. § 2255 Mot. 8.) He asserts that "[t]he jury did not hear anyone, including the officers, say that definitively Mr. Ford had and threw the gun." (*Id.*) Essentially, Ford's argument challenges the sufficiency of the evidence used to prove that he had possessed a handgun and ammunition. On direct appeal, however, Ford asserted that this Court had erred by denying his Rule 29 motion, arguing "that the Government did not establish that he actually possessed a firearm and ammunition." *United States v. Ford*, 585 F. App'x 295, 295–96 (4th Cir. 2014). Given this, Claim Two is barred from review here because the Fourth Circuit rejected it on direct review, and Ford fails to direct the Court to an intervening change in the law that would warrant its reconsideration. *See United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) (citing cases); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).[4] Accordingly, Claim Two will be DISMISSED.

### III. SENTENCING ERROR CLAIMS

In Claim One (a), Ford contends that he "did not qualify as a career offender." However, as noted *supra* in Part I, Ford was never subject to a sentence enhancement based upon a career offender classification. (*See* PSR ¶ 35.) Therefore, Claim One (a) will be DISMISSED.

---

[4] Moreover, ample evidence established Ford's guilt. During Ford's trial, Officer Langston testified that during the incident, he saw Ford reach for his "waistband and his pocket area." (Jan. 14, 2014 Tr. 57, ECF No. 45.) Ford then "took off running back through the breezeway" of one of the apartment buildings. (Jan. 14, 2014 Tr. 58.) As Ford ran, Officer Langston observed him make a "[t]hrowing motion to the right side the building, of the hallway." (Jan. 14, 2014 Tr. 60.) Officer Langston testified that at that time, he heard "[a] heavy clanging noise of metal hitting wood or concrete or something like that." (Jan. 14, 2014 Tr. 60.) After Ford was placed in handcuffs, Officer Langston went back to the area where he had seen Ford make the throwing motion and had heard the clanging noise. (Jan. 14, 2014 Tr. 63.) In that area, he "saw Black & Milds, Swisher Sweets, and a couple other items, cigarettes . . . all in their packaging. . . . I also seen [sic] the handgun." (Jan. 14, 2014 Tr. 63.) On cross-examination, Langston admitted that he never saw a handgun in Ford's hands or the waistband of his shorts. (Jan. 14, 2014 Tr. 72.) He also admitted that when he saw Ford make a throwing motion, he could not "clearly make out any of the objects that [he] saw." (Jan. 14, 2014 Tr. 73.) Officer Awad also testified that he heard a "loud clang" while pursuing Ford. (Jan. 14, 2014 Tr. 90–92.)

In Claim One (b), Ford alleges that his "sentence was in error." (§ 2255 Mot. 4.) Ford contends that "only the 2003 felony conviction qualifies for 3-points, and the 2005 conviction does not." (*Id.*) Ford believes that "[h]is total criminal history score is four points, and he should be category III." (*Id.*) Moreover, Ford argues that "[t]he 11/24/2003 conviction should have *2 criminal history points* and the 07/05/2003 conviction should have *1 criminal history point*, while the misdemeanor trespassing which had a 12 month sentence would qualify under § 4A1.1(c) and/or 4A1.2(c), as appropriate." (Mem. Supp. § 2255 Mot. 6.)

Several of these arguments are based upon Ford's misunderstandings of the PSR. Although Ford was arrested on November 24, 2003, on charges of possession of cocaine with intent to distribute and trespassing, those charges were *nolle prossed* on January 5, 2004. (PSR ¶ 30.) Therefore, no criminal history points were assigned to that arrest. Ford was arrested for trespassing on July 5, 2003 and was subsequently sentenced to ten days of jail, suspended for good behavior. (*Id.* ¶ 19.) However, no criminal history points were assigned to that conviction either. (PSR Wksht. C.)

Finally, Ford takes issue with the two criminal history points assigned to the sentences for three trespassing convictions, imposed on August 12, 2005. (Mem. Supp. § 2255 Mot. 6; *see also* PSR Wksht. C.) Ford was sentenced to twelve months in jail, with eight months suspended conditioned upon good behavior. (PSR ¶ 24; *see also* PSR Wksht. C.) Under the Sentencing Guidelines, two points are assigned to "each prior sentence of imprisonment of at least sixty days not counted in [§ 4A1.1](a)." *United States Sentencing Guideline Manual* § 4A1.1(b) (U.S. Sentencing Comm'n 2013) ("USSG"). Moreover, sentences for trespassing offenses are only counted "if (A) the sentence was a term of probation of more than one year or a term of

imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." USSG § 4A1.2(c)(1). Given this, the Probation Officer properly assigned two criminal history points to these convictions.

In sum, the Probation Officer did not err in calculating Ford's criminal history. Furthermore, Ford provides no support for his assertion that he should have received a total of four criminal history points and been placed in Criminal History Category III. Accordingly, Claim One (b) will be DISMISSED.

In Claim Five, Ford alleges that the residual "clause [of the ACCA] is unconstitutionally vague requiring correction of sentence." (Mem. Supp. § 2255 Mot. 20.) Ford claims that his "case is one of those affected by the Supreme Court's recent holdings in *Johnson v. United States*," 135 S. Ct. 2551 (2015). (*Id.*)

> As the Supreme Court has noted,
>
> [u]nder the [ACCA] of 1984, a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a "violent felony," a term defined to include any felony that "involves conduct that presents a serious potential risk of physical injury to another."

*Johnson*, 135 S. Ct. at 2555 (quoting 18 U.S.C. § 924(e)(2)(B)). This part of the definition of violent felony "ha[s] come to be known as the Act's residual clause." *Id.* The *Johnson* Court held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Id.* at 2563. However, as noted *supra* in Part I, Ford was never subject to a sentence enhancement under the ACCA. (PSR ¶ 35.) Because the Court's ruling in *Johnson* has no effect on Ford's case, Claim Five will be DISMISSED.

6

## IV. JURISDICTION CLAIM

In Claim Three, Ford contends that "[t]he Government violated both the defendant's and the State's Tenth Amendment rights" by prosecuting him. (§ 2255 Mot. 7.) According to Ford, because his case "was initiated by a state police force, . . . [the] State had original jurisdiction and first right of prosecution, which [the] federal government illegally took when they stepped in to take the case." (*Id.*) Ford was initially charged in the Circuit Court for the City of Richmond, Virginia, with possession of a firearm by a convicted felon, receiving stolen property, and trespassing; the charges were subsequently *nolle prossed* in favor of federal prosecution. (PSR ¶¶ 9, 34.) Under the doctrine of dual sovereignty, "[b]oth the federal government and the state government may prosecute an individual for the same act, even if the defendant has already been prosecuted by the other for the same illegal activity." *United States v. Taylor*, 240 F.3d 425, 428 (4th Cir. 2001) (citing *Abbate v. United States*, 359 U.S. 187, 195–96 (1959); *United States v. Smith*, 30 F.3d 568, 572 (4th Cir. 1994)). Because Ford's prosecution by the federal government was proper, Claim Three will be DISMISSED.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In Claim Four, Ford contends that "counsel rendered ineffective assistance of counsel which caused prejudice and harm[] to Mr. Ford." (§ 2255 Mot. 8.) According to Ford, "counsel failed to demand reports on forensics for the firearm, including fingerprinting, ballistics, and the theft investigatory records of the stolen firearm." (Mem. Supp. § 2255 Mot. 18.) According to Ford, if counsel had requested these items in a motion for discovery, they would have shown:

1. Officers improperly handled the firearm without gloves, as required by protocol (locally);
2. Officers failed to test the gun for fingerprints conclusively showing whether or not Mr. Ford had at any time, handled the gun;

3. Officers failed to protect the firearm by placing it into an evidence bag, as protocol requires;
4. There was no connection between the theft of the firearm and Mr. Ford;
5. That there was no evidence the gun was used in another crime.

(*Id.* at 18–19.) Ford also asserts that counsel failed "to go after the conflicting testimony, as set out above in [Claim Two]." (*Id.* at 19.) Ford's claim lacks merit.

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

During trial, Officers Langston and Award testified that they did not wear gloves to retrieve the firearm, did not test the firearm for fingerprints, and placed the firearm into an evidence box rather than a bag. (Jan. 14, 2014 Tr. 73–74, 92–96.) Moreover, nothing introduced at trial or stated in Ford's PSR indicated that he was the individual who had first stolen the firearm or that the firearm was conclusively linked to the robberies that had occurred in the area. (PSR Addendum at A–1.) Moreover, on cross examination, counsel confirmed that Officer

8

Langston had not seen a handgun in Ford's hands or in the waistband of his shorts. (Jan. 14, 2014 Tr. 72.) Counsel also confirmed that Officer Langston could not "clearly make out any of the objects that [he] saw" Ford throw. (Jan. 14, 2014 Tr. 73.) While counsel did not file a motion for discovery, as Ford contends that she should have, the record makes clear that counsel elicited this same information at trial. Therefore, because Ford has failed to demonstrate any resulting prejudice, Claim Four will be DISMISSED.

## VI. CONCLUSION

Ford seeks reconsideration of the Order denying his Motion for the Appointment of Counsel.[5] Given that the Court has dismissed all of Ford's claims, appointment of counsel is not warranted. Accordingly, Ford's Motion for Reconsideration (ECF No. 56) will be DENIED. Ford's § 2255 Motion (ECF No. 51) will be DENIED. The action will be DISMISSED. The Court will DENY a certificate of appealability.

An appropriate Order will accompany this Memorandum Opinion.

/s/ 
John A. Gibney, Jr.
United States District Judge

Date: 7/1/16
Richmond, Virginia

---

[5] By Order entered on August 24, 2015, the Court denied Ford's motion for the appointment of counsel with respect to his § 2255 Motion. (ECF No. 55, at 2.) Specifically, the Court noted that "there is no constitutional right to counsel in a non-capital federal habeas case." (Id. at 1 (citations omitted).) The Court further concluded that "Petitioner's articulate § 2255 motion belies the assertion that Petitioner lacks the ability to present his claims." (Id. at 2.)